**Alexandria**

KAREN JOYCE SYLVESTRE

v.

COMMONWEALTH OF VIRGINIA

No. 0556-88-4

Decided April 24, 1990

254

COUNSEL

John W. Thyden, for appellant.

Richard B. Smith, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

DUFF, J.—The issue presented by this appeal is whether the Commonwealth's evidence was sufficient to sustain Karen J. Sylvestre's conviction under Code § 18.2-181 (bad check law). Sylvestre also contends that Code § 18.2-183, providing for an evidentiary presumption of fraudulent intent, was unconstitutionally applied to her because the Commonwealth's evidence showed that she never received the notice letter from the payee of the check. Upon careful review of the record and the authorities cited, we reverse the conviction.

I.

The record shows that on May 8, 1987, Karen Sylvestre drew a check on her personal account with the First Virginia Bank. The check was made payable to Safeway Stores, Inc., in the amount of $97.82, and was returned to Safeway on or about May 11, 1987, because the account contained insufficient funds. The record does not show whether Sylvestre negotiated the check to Safeway to

obtain goods, or cash, or to pay on an account or for an existing debt or for some other purpose. Approximately ten days later, a Safeway employee telephoned Sylvestre, bringing the matter to her attention. On June 5, 1987, Safeway mailed an envelope to Sylvestre at the address printed on the check. The envelope was not claimed after notices on June 6, 11, and 21, 1987, and was then returned to Safeway. The record contains no evidence as to the contents of the envelope.

At the conclusion of the Commonwealth's case-in-chief, Sylvestre moved to strike the evidence as being insufficient to sustain a conviction under Code § 18.2-181. The motion was denied and Sylvestre presented her evidence. At the conclusion of all the evidence, she unsuccessfully renewed her motion to strike. Also, she filed a motion to set aside the conviction based upon her contention that the presumption provided by Code § 18.2-183 was unconstitutionally applied to her under the facts in evidence.

## II.

We begin our analysis by considering whether Sylvestre may raise the issue of sufficiency of the evidence. The Commonwealth, based upon *White v. Commonwealth*, 3 Va. App. 231, 348 S.E.2d 866 (1986), contends that she waived her right to complain about the sufficiency of the evidence at the conclusion of its case when she put on her own evidence after the denial of her initial motion to strike. However, the *White* court held "that a defendant is barred on appeal from challenging the sufficiency of the evidence when he fails to renew his motion to strike the evidence after presenting his case. . . ." *Id.* at 234, 348 S.E.2d at 870. If the motion to strike is renewed, then the court must consider the entire record in testing the sufficiency of the evidence. *Spangler v. Commonwealth*, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948). The record shows that Sylvestre not only renewed her motion to strike, but moved to set aside her conviction. We find, therefore, that the issue has been properly preserved for appeal.

## III.

Sylvestre argues that Code § 18.2-181[1] requires a showing of present consideration of goods or services given in exchange for the check. In 1978, the General Assembly added what is now the last paragraph of the statute containing the phrase "present consideration." The first paragraph, providing the definition of the offense and designating it as larceny, remains virtually unchanged since it was originally enacted in 1920. We consider the purpose underlying the amendment.

In *Lund v. Commonwealth*, 217 Va. 688, 232 S.E.2d 745 (1977), the Supreme Court held that, except where modified by statute, the common law definition of larceny remains in force in Virginia. It further specifically held that one could not be convicted of the larceny of computer time or services under the then existing general larceny or false pretense statutes. As the Court observed, at common law labor or services could not be the subject of the crime of larceny because neither time nor services could be taken and carried away. *Lund* further noted that some jurisdictions had amended their penal codes to make it a crime to obtain labor and services by means of false pretense, but Virginia had not done so.

In 1978, apparently in response to the *Lund* decision, the General Assembly enacted Code § 18.2-98.1, *et seq.* (now Code § 18.2-152.1, *et seq.*), and designated computer time, services, and data as property that could be the subjects of larceny. Also enacted were several related statutes dealing with utility fraud:

---

[1] Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check, draft, or order has a represented value of $200 or more, such person shall be guilty of a Class 6 felony. In cases in which such value is less than $200, the person shall be guilty of a Class 1 misdemeanor.

The word "credit" as used herein, shall be construed to mean any arrangement or understanding with the bank, trust company, or other depository for the payment of such check, draft or order.

Any person making, drawing, uttering or delivering any such check, draft or order in payment as a present consideration for goods or services for the purposes set out in this section shall be guilty as provided herein.

Code § 18.2-165.1 made the unlawful use of or tampering with cable television service a Class 3 misdemeanor; Code § 18.2-187.1 prohibited obtaining oil, electric, gas, water, telephone, telegraph, or cable television service without payment. At their 1978 session, the General Assembly also amended Code § 18.2-181 by adding the last paragraph referring to "present consideration." One commentator has observed: "The General Assembly also amended the larceny by check statute to clarify that the statute covers giving a bad check for any services." *See* Comment, *Survey of Developments in Virginia Law, 1977-78,* 64 Va. L. Rev. 1407, 1414 n.68 (1978).

The Commonwealth also points to an opinion issued by the Attorney General, which contains the following language:

The 1978 amendment to Code § 18.2-181 addresses itself to a narrowly drawn factual situation. It does not negate the language contained in the first paragraph of the section which allows the prosecution of any person who issues bad checks with the intent to defraud.

1979-1980 Report of the Attorney General 42, 43 (1980). The Commonwealth also cites *Payne v. Commonwealth,* 222 Va. 485, 281 S.E.2d 873 (1981) in which the Supreme Court observed that "[i]t need not be shown. . .that anything was received in return for the check, for the offense is complete when, with the requisite intent, a person utters a check he knows to be worthless." *Id.* at 488, 281 S.E.2d at 874. *Payne,* however, while of value in our analysis, does not control the issue before us as it was decided under the statute as it existed prior to the 1978 amendment.

In interpreting the legislative intent in enacting the 1978 amendment to Code § 18.2-181, we are required to adopt the plain meaning of the statute rather than a curious, narrow or strained construction. *Crews v. Commonwealth,* 3 Va. App. 531, 535-36, 352 S.E.2d 1, 3 (1987). When so viewed, we hold that the purpose of the amendment was simply to provide that bad checks given as present consideration for intangible goods or services may, assuming all other provisions of the statute are met, constitute the crime of larceny. However, as held in *Bray v. Commonwealth,* 9 Va. App. 417, 388 S.E.2d 837 (1990), the amendment did not make it the crime of larceny to give a bad check as payment for past debts or as gifts, nor did the amendment alter or

limit the scope of the first paragraph as it existed prior to 1978.

## IV.

A conviction under Code § 18.2-181 also requires proof of the fraudulent intent of the drawer of the check. Sylvestre contends, and we agree, that the record contains no direct evidence of any such intent on her part. The trial court, therefore, must have relied on the presumption contained in Code § 18.2-183. That statute provides that the drawing of a check without sufficient funds shall constitute prima facie evidence of intent to defraud when the drawer is given "written notice that such check, draft, or order has not been paid to the holder thereof." The record contains no evidence that Sylvestre ever received such written notice. The envelope introduced into evidence was sent to her, but never delivered. The Commonwealth's only witness, Mr. Andriuk, testified that "a letter" was sent to Sylvestre. He did not testify that he signed the letter or that he had actual knowledge of its contents. The trier of fact could only speculate what the envelope contained. For the presumption of fraudulent intent to arise, the requirements of the statute must be met by admissible evidence, not by speculation or suspicion. The court erred, therefore, to the extent that it relied upon the presumption.

The Commonwealth argues, however, that proof of fraudulent intent was established by Sylvestre's testimony that she had received actual notice by telephone that her check had been returned for insufficient funds, and had agreed to repay the amount owed. This argument assumes that her unfulfilled agreement to repay evinces a fraudulent intent at the time the check was issued. That conclusion does not necessarily follow. Her agreement to repay was nothing more than an acknowledgment that she was indebted to Safeway. It did not prove that she knew that she had insufficient funds when she drew the check or that she did so with an intent to defraud.

Under the bad check statute, the gravamen of the offense is the intent to defraud. It may be established by either direct or circumstantial evidence. In an appropriate case, the presumption provided by Code § 18.2-183 may aid in establishing intent. *Huntt v. Commonwealth*, 212 Va. 737, 739, 187 S.E.2d 183, 185 (1972). Intent to defraud means that the defendant intends to "deceive

another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." Black's Law Dictionary 381 (5th ed. 1979). "Such intent is an indispensable element of the crime and the burden is upon the Commonwealth to prove its existence at the time of drawing or uttering the check." *Huntt*, 212 Va. at 739, 187 S.E.2d at 185. Unless Sylvestre's bad check was given to obtain goods, services or money, there would have been no change or alteration of any right held by Safeway when the check was drawn and thus no fraudulent intent could be shown.

In summary, we hold that proof that Sylvestre passed a bad check to Safeway, standing alone, is not adequate to bring the case within the ambit of Code § 18.2-181. The evidence also was insufficient to give rise to a presumption of fraudulent intent under Code § 18.2-183. As the evidence did not exclude the hypothesis that the check was given for a past debt, the motion to strike should have been granted.

Accordingly, the conviction is reversed and dismissed.

*Reversed and dismissed.*

Koontz, C.J., concurred.

Benton, J., concurring.

I join in Parts I, II, and IV of the opinion, and, for the reasons stated in those Parts, I would reverse the conviction. I do not join in Part III because we are required to "strictly" construe a penal statute against the Commonwealth and to limit the "application [of a penal statute] to cases clearly falling within the language of the statute." *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). The majority has adopted the analysis of *Bray v. Commonwealth*, 9 Va. App. 417, 388 S.E.2d 837 (1990), which, contrary to the principles of *Turner*, expansively construes Code § 18.2-181, as amended.