COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Friedman
Argued at Richmond, Virginia

JOHN MICHAEL PHILLIPS

MEMORANDUM OPINION* BY
v.      Record No. 0224-21-2      JUDGE FRANK K. FRIEDMAN
JANUARY 11, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AMELIA COUNTY
Joseph M. Teefey, Jr., Judge

Preston G. Williams (The Williams Law Firm, PLLC, on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

John Michael Phillips appeals from his convictions of misdemeanor obtaining money by

false pretenses and felony failure to appear by the Circuit Court of Amelia County. For the

reasons that follow, we affirm the judgment of the circuit court.

I.  BACKGROUND

In August of 2018, Joyce Cook contacted Phillips, whom she had met years prior, and

inquired whether he was "still contracting." Phillips told her "yes," although he did not have a

valid contractor's license. Joyce and Phillips then entered into a contract for construction work

on Joyce's home, calling for Phillips to remove the roof over the porch and install new shingles,

extend the porch three feet, remove and replace a sliding door with a French door, install an

awning above a side door, and remove and replace the yard fence. The contract quoted a price of

$5,000 for labor, with terms that Joyce would buy all the materials needed for the project and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

would pay half the money up front, with the remainder to be paid upon completion of the work. The first $2,500 was paid to Phillips on August 24, 2018.

The required materials were purchased and delivered to Joyce's home about two weeks after the August 24, 2018 payment. Phillips began work on Joyce's property approximately one month after the materials had been delivered.

On October 20, 2018, Phillips requested an additional $2,000 from Joyce for more building materials. Joyce gave him $1,100 and testified that she paid him because he told her that his roof had caved in and he needed to move. Phillips gave Joyce a receipt showing $1,100 was received from Joyce and her husband, Harold Cook, on October 20, 2018, "for porch job."[1]

On November 7, 2018, Phillips requested another $2,000 from Joyce and Harold for building materials. In response to this request, the Cooks and Phillips signed a second agreement which stated that $1,700 would be paid in advance for the needed materials including eight pieces of lattice, six bundles of shingles, and other materials including screws and nails purportedly needed to finish the porch. The agreement also stated that an additional $1,000 for labor would be paid when the job was complete.

Following this agreement, Phillips purportedly bought the needed materials. He later installed some of the siding and installed one piece of lattice on the porch. Phillips told Joyce that he had the other building materials at his home, but Joyce never saw or received the remaining materials, other than the siding and the material used to cover the inside of the porch. After the November contract was entered, Phillips appeared at the Cooks' home one or two times to install siding but he did not return after that. The Cooks never saw the bulk of the materials

---

[1] During the course of their business relationship, Phillips also apprised the Cooks of several financial downturns that he was facing. The Cooks responded by giving him $350 to pay outstanding court costs and $1,397.50 for moving expenses. The trial court found those two payments to be gifts, and we do not disturb this finding on appeal.

involved in the November 7 contract. Joyce further stated that she did not believe some of the materials purchased were needed for the job.

In total, Phillips tore down the original porch, extended the new porch by three feet, replaced the beams on the porch, installed shingles on the roof over the porch, installed some lattice and siding on the porch, installed a "covering" on the inside of the porch, installed storm doors, and replaced the sliding door with the French door. Although Phillips replaced the old porch roof, the new roof kept leaking and the Cooks eventually hired another company to fix it.

Phillips failed to put up an awning over the side door. He did not finish installing siding at the top of the porch, nor did he tear down the old fence or install the new fence. As for the materials allegedly purchased in conjunction with the November contract, Phillips never brought the unused building materials to the Cooks' house, nor did he reimburse them for the materials that were not used. Phillips did not possess a contractor's license at any time between August of 2018 and June of 2019.

Phillips was indicted in December of 2019 for one felony charge of obtaining money by false pretenses and one misdemeanor charge of practicing a profession without a license. His case was scheduled for June 23, 2020, and Phillips did not appear in court on that date. He was later arrested on a capias to show cause why he should not be found guilty of felony failure to appear.

At his trial, Phillips entered a plea of no contest to the charge of practicing a profession without a license and was found guilty. He entered a plea of not guilty to the felony charge of failure to appear in court and was found guilty. He also entered a plea of not guilty to the felony charge of obtaining money by false pretenses. On this charge, the trial court found that Phillips had defrauded the Cooks but that there was insufficient evidence to establish that he had fraudulently taken over $500 from them, and therefore the court found Phillips guilty of

misdemeanor larceny in violation of Code § 18.2-178. Phillips assigned error to the trial court's rulings as to obtaining money by false pretenses and failing to appear in court. This Court granted review on both issues.

## II.  ANALYSIS

### A.  Phillips Has Abandoned His Assignment of Error as to the Failure to Appear Conviction.

Phillips' assignment of error as to the failure to appear charge has been waived. His opening brief does not contain any principles of law or legal authority to support his claim that the evidence was insufficient to support the failure to appear conviction. Moreover, his brief does not include any assignment of error on this issue or any discussion relating to the failure to appear charge. *See* Rule 5A:20(c)(1) ("[o]nly assignments of error listed in the brief will be noticed by this Court"); *see also Andrews v. Commonwealth*, 280 Va. 231, 253 (2010) (finding that counsel "made an affirmative, strategic decision" to abandon certain issues where those assignments of error were not included in his opening brief); *Ferrell v. Commonwealth*, 62 Va. App. 142, 151 (2013) (holding that appellant waived his sufficiency challenge by raising it in his petition for appeal but not including it in his opening brief). The judgment as to Phillips' failure to appear charge must stand.

### B.  The Evidence is Sufficient to Uphold Phillips' Conviction for Obtaining Money by False Pretenses.

This Court must consider the evidence relating to the false pretenses conviction in the light most favorable to the Commonwealth, the prevailing party below, and may reverse the judgment of the trial court only when its decision "is plainly wrong or without evidence to support it." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). Furthermore, this Court must "discard any of appellant's conflicting evidence, and regard as true

- 4 -

all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).[2]

Phillips states in his assignment of error that "there was no intent to defraud because [he] had substantially complied with the contract." There are four elements that the Commonwealth must prove in order to sustain a conviction for larceny by false pretenses: "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property." *Bourgeois v. Commonwealth*, 217 Va. 268, 272 (1976).

Phillips only challenges the trial court's judgment regarding the first element of the offense: intent. "Intent to defraud means that the defendant intends to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.'" *Sylvestre v. Commonwealth*, 10 Va. App. 253, 258-59 (1990) (quoting *Black's Law Dictionary* 381 (5th ed. 1979)).

"The Supreme Court has unambiguously held that in a prosecution for larceny by false pretenses, the Commonwealth must prove 'the fraudulent intent . . . existed at the time the false pretenses were made, by which the property was obtained.'" *Lewis v. Commonwealth*, 28

---

[2] The Commonwealth argues that Phillips' assignment of error as to the sufficiency of the evidence on the obtaining money by false pretenses charge is also subject to waiver under Rule 5A:20(e), as he failed to cite to any principles of law or legal authority in his opening brief. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992). Phillips counters that where a sufficiency argument is raised, the focus of the appeal is on evidence rather than case law. We need not resolve this dispute, as the doctrine of judicial restraint requires us to decide cases on "the best and narrowest grounds available," which in this case permits a resolution on the merits. *Abdo v. Commonwealth*, 64 Va. App. 468, 472-73 n.1 (2015). The evidence plainly supports the false pretenses ruling.

Va. App. 164, 172 (1998) (quoting *Riegert v. Commonwealth*, 218 Va. 511, 518 (1977)). Thus, the question is whether "the intent to defraud existed at the time the act was committed." *Id.* (quoting *Riegert*, 218 Va. at 518). "Merely showing that the accused knowingly stated what was false is not sufficient; there also must be proof that his intent was to defraud and that the fraudulent intent existed at the time the false pretenses were made." *Grites v. Commonwealth*, 9 Va. App. 51, 56 (1989).

Circumstantial evidence is "practically the only method of proof" for establishing intent. *Parks v. Commonwealth*, 221 Va. 492, 498 (1980) (citing *Turner v. Commonwealth*, 218 Va. 141, 145-56 (1977)); *Toler v. Commonwealth*, 188 Va. 774, 780 (1949)). In order to determine intent, the "conduct and representations of the accused must be examined, since intent is 'a secret operation of the mind.'" *Riegert*, 218 Va. at 519 (quoting *Trogdon v. Commonwealth*, 72 Va. (31 Gratt.) 862, 872 (1878)).

Here, there was sufficient evidence to prove that Phillips possessed the requisite fraudulent intent in his dealings with the Cooks. Phillips points to his alleged "substantial compliance" with the initial contract as evidence that he did not have the intent to defraud the couple. His alleged "compliance" with the original contract is dubious,[3] but ultimately Phillips' dealings with the Cooks in the subsequent November contract amply demonstrate intent to defraud. As the trial court only convicted Phillips of a misdemeanor, it is a reasonable inference that the court did not find every aspect of the transaction fraudulent. The evidence is overwhelming, however, that Phillips had the requisite intent to defraud at the time of the signing of the November 2018 agreement for additional materials.

---

[3] Again, several aspects of the job were never begun; others were never finished, or were performed so clumsily that another contractor was required to repair them.

In November, at Phillips' request, the Cooks entered a second contract paying Phillips an additional $1,700, which was to be used for specific building materials which Phillips said were needed to finish the job. Under the initial contract, materials were delivered to the Cooks' home; under the November contract, Phillips reported that the "additional materials" were delivered to his home. After receiving the $1,700 payment, Phillips put up some of the siding and one piece of lattice. Phillips told Joyce that the rest of the materials were at his house. Phillips, however, never brought the materials to the Cooks' home or used them in the construction work, nor did he reimburse the Cooks for their cost. Joyce Cook ultimately testified that she did not think some of these materials were needed for the job.

After this November transaction, Phillips ventured to the Cooks' home once or twice to work on the project and then stopped coming altogether. Phillips failed to communicate with the Cooks as to why the work stopped, but he kept their money. It is a reasonable inference that Phillips told the Cooks they needed the additional materials to get payment from them, even though he never intended to deliver the materials. Certainly, the bulk of the "additional materials" purchased with the Cooks' money were never used by Phillips on their project. This evidence is sufficient to support the trial court's finding that Phillips obtained money by false pretenses. *Quidley v. Commonwealth*, 221 Va. 963, 965 (1981).

The trial court's decision was not plainly wrong or without evidence to support it. The evidence confirms that Phillips had the requisite intent to defraud the Cooks, and the judgment of the trial court is affirmed.

*Affirmed.*